## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHERRY MORTON and NATIONAL AEROBICS & FITNESS TRAINERS ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> BCAP GDI 1, INC., <br><br> Defendant. | Civil Action No.: 1:24-cv-01432-JLH |

## <u>PROPOSED FINAL PRETRIAL ORDER</u>

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS....................................................................................................... i

I.   SUMMARY OF THE ACTION AND PLEADINGS ...............................................1

    A.   Nature of the Case ......................................................................................1

    B.   Jurisdiction ..................................................................................................4

II.  FACTS .....................................................................................................................5

    A.   Facts that are Admitted and Require No Proof .............................................5

    B.   Contested Facts............................................................................................5

III. ISSUES OF LAW ...................................................................................................5

IV.  EXHIBITS ...............................................................................................................5

    A.   Trial Exhibits...............................................................................................5

    B.   Demonstratives ............................................................................................8

V.   STATEMENT OF INTENDED PROOF....................................................................9

    A.   Plaintiffs ......................................................................................................9

    B.   BCAP.........................................................................................................10

VI.  WITNESSES..........................................................................................................13

VII. MOTIONS IN LIMINE..........................................................................................14

VIII. AMENDMENTS TO THE PLEADINGS ...............................................................15

IX.  SETTLEMENT EFFORTS.....................................................................................15

X.   LENGTH OF TRIAL..............................................................................................15

-ii-

Parties' Joint Statement of Uncontested Facts....................................................................Exhibit 1

Plaintiffs' Statement of Facts...........................................................................................Exhibit 2

BCAP's Statement of Facts ..............................................................................................Exhibit 3

Plaintiffs' Statement of the Issues...................................................................................Exhibit 4

BCAP's Statement of the Issues ......................................................................................Exhibit 5

Joint Trial Exhibits..........................................................................................................Exhibit 6

Plaintiffs' List of Exhibits...............................................................................................Exhibit 7

BCAP's List of Exhibits ..................................................................................................Exhibit 8

Plaintiffs' List of Witnesses............................................................................................Exhibit 9

BCAP's List of Witnesses .............................................................................................Exhibit 10

BCAP's Motion in Limine #1........................................................................................Exhibit 11

BCAP's Motion in Limine #2........................................................................................Exhibit 12

BCAP's Motion in Limine #3........................................................................................Exhibit 13

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.3.  Plaintiffs and Counter-Defendants, Sherry Morton and National Aerobics & Fitness Trainers Association ("NAFTA") (collectively, "Plaintiffs"), and Defendant and Counter-Plaintiff, BCAP GDI 1, Inc. ("BCAP") (together with Plaintiffs, the "Parties"), through their undersigned counsel, hereby submit this Proposed Final Pretrial Order.  This order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

## I.  SUMMARY OF THE ACTION AND PLEADINGS

### A.  Nature of the Case

1.  This civil action arises out of contract disputes between the Parties following the November 1, 2023 acquisition (the "Closing") by BCAP of Millennium Health & Fitness, Inc. ("Millennium" or "MHF") from Morton and execution of agreements accompanying that transaction.

2.  Morton asserts Breach of Contract claims against BCAP. Morton alleges that BCAP is wrongfully withholding post-Closing payments under the November 1, 2023 Stock Purchase Agreement ("SPA"), pursuant to which BCAP acquired ownership of Millennium. Morton also alleges that BCAP breached the SPA by granting its senior lender, Pinnacle Bank, a lien on certain assets.

3.  NAFTA asserts a Breach of Contract claim against BCAP.  NAFTA alleges that BCAP wrongfully terminated the November 1, 2023 Independent Contractor Agreement between BCAP and NAFTA (the "NAFTA Agreement") and has wrongfully caused Millennium to withhold payments due under the NAFTA Agreement.

1

4.      BCAP asserts that the plain language of the SPA defeats Morton's claims that BCAP wrongfully withheld specified funds (the "Indemnity Holdback") after Closing (Counts I and III of the Complaint, D.I. 2).  Specifically, BCAP asserts that it properly withheld the Indemnity Holdback to remunerate itself for Losses that Morton caused.  The SPA defines "Loss" as "any loss, damage, due, penalty, fine, interest, cost, amount paid in settlement, judgment, Liability, Tax, Lien (other than Permitted Liens), cost of investigation, expense and fee (including court costs and attorneys' or other professionals' fees and expenses paid or incurred)…. For the avoidance of doubt, 'Mis-Certification Losses' shall be included in the definition of 'Loss.'" BCAP relies on Section 7.9 of the SPA, which states, "For any indemnified Losses, [BCAP] may utilize the Indemnity Holdback in its sole discretion to remunerate [BCAP] for such Losses. … [BCAP] will have the right…to set off any amounts payable to [BCAP] under this Agreement against any amounts payable to the Seller, whether under this Agreement, any other Transaction Document or otherwise, including with respect to any sums owed to Seller by Buyer or [MHF] relating to this Agreement.  The exercise of such set-off by a Buyer Party, whether or not ultimately justified, shall not constitute a breach of this Agreement."

5.      BCAP asserts that the plain language of the SPA also defeats Morton's claim that BCAP wrongfully granted its lender a lien on the Indemnity Holdback amount (Count II of the Complaint, D.I. 2).  Specifically, BCAP relies on Section 7.13 of the SPA, which states, "Buyer shall not permit the Indemnity Holdback to be subject to any lien, covenant, or other limitation to any lender to Buyer or an Affiliate of Buyer, pursuant to any purported loan term, 'subordination agreement,' or otherwise . . . Notwithstanding the foregoing, the Buyer shall have the right to collaterally assign (or has already collaterally assigned) to its senior lender all of its right, title and

2

interest in, to and under this agreement as collateral for the financing arrangements provided (or to be provided) to buyer to assist with the consummation of the acquisition contemplated hereby."

6.       Regarding NAFTA's claim (Count IV in the Complaint, D.I. 2), BCAP asserts that it properly terminated the NAFTA Agreement based on NAFTA's prior material breach arising from what BCAP claims were extremely poor quality services rendered by NAFTA (that did not meet the "highest industry standard" promised in the agreement), as well as BCAP's allegation that Morton's refused to deliver agreed-upon services and demanded additional compensation beyond what the executed contract provided.

7.       In its counterclaims, BCAP seeks compensation for Losses that it alleges Morton caused through her pre- and post-Closing misconduct and breaches of the representations and warranties in the SPA.  BCAP asserts nine counterclaims against Morton based on its allegations of: (1) her failure to pay off payroll liabilities that accrued prior to Closing; (2) her failure to pay off accounts payable that accrued prior to Closing; (3) her material misstatements of MHF's financial condition at the time of Closing; (4) her theft and destruction of MHF's critical business files and intellectual property; (5) her failure to transition ownership of MHF by fully transferring access to and control of key business accounts; (6) her improper competition with MHF and disclosure of confidential information; (7) her failure to deliver quality services pursuant to her consulting obligations; (8) her failure to pay specific legal expenses explicitly covered by a Side Letter Agreement; and (9) her failure to disclose a yearslong practice of wrongfully billing customers under a government contract at the Environmental Protection Agency ("EPA"), which BCAP claims required MHF to investigate its obligations and make a disclosure to the Office of Inspector General ("OIG"), causing significant Losses for MHF.

8.      Morton denies all of BCAP's claims and denies that her conduct injured BCAP or MHF in any way.  Morton further alleges that one of BCAP's claims is time-barred under the terms of the SPA, other claims are subject to dismissal based on the SPA and the undisputed facts, and that BCAP's other claims are unsupported by the evidence.

9.      NAFTA denies that its services were deficient, as they have been accepted by government agencies for decades, and otherwise denies that it breached the NAFTA Agreement

10.     On October 24, 2024, BCAP initiated the claims process under the SPA and notified Morton and NAFTA of the alleged deficiencies and breaches.  Morton and NAFTA responded, and the parties engaged in discussions regarding potential resolutions.

11.     On December 31, 2024, Morton and NAFTA filed their Complaint (D.I. 2).

12.     On January 24, 2025, BCAP filed its Answer and Counterclaims (D.I. 12) to Plaintiffs' Complaint.

**B.      Jurisdiction**

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     Morton is a citizen of Texas. She was a citizen of Arizona when Plaintiffs filed this case.

15.     NAFTA is an Arizona non-profit association with its principal place of business in Arizona.

16.     BCAP is a Delaware corporation with its principal place of business in Virginia.

4

## II.   FACTS

### A.  Facts that are Admitted and Require No Proof

17.     The Parties' Joint Statement of Uncontested Facts is attached as **Exhibit 1**. The facts in Exhibit 1 are not disputed or have been stipulated to by the Parties for the purposes of trial. These uncontested facts shall require no proof at trial and will automatically become part of the evidentiary record in this case.

### B.  Contested Facts

18.     Plaintiffs' statement of facts in issue that they contend remain to be litigated is attached as **Exhibit 2**.

19.     BCAP's statement of facts in issue that it contends remain to be litigated is attached as **Exhibit 3**.

20.     If the Court determines that any issue identified in the statements of fact in issue is more properly considered an issue of law, it should be so considered.

## III.   ISSUES OF LAW

21.     Plaintiffs' statement of the issues of law they contend remain to be litigated, and their citation of authorities relied upon, is attached as **Exhibit 4**.

22.     BCAP's statement of the issues of law it contends remain to be litigated, and its citation of authorities relied upon, is attached as **Exhibit 5**.

23.     If the Court determines that any issue identified in the statement of issues of law is more properly considered an issue of fact, it should be so considered.

## IV.   EXHIBITS

### A.    Trial Exhibits

24.     The joint list of exhibits the Parties intend to offer at trial is attached as **Exhibit 6**.

25.     Plaintiffs' list of exhibits it intends to offer at trial, with BCAP's objections, is attached as **Exhibit 7**.

26.     BCAP's list of exhibits it intends to offer at trial, with Plaintiffs' objections, is attached as **Exhibit 8**.

27.     The Parties agree that exhibits to be used solely for impeachment need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.  The Parties reserve the right to offer additional exhibits either by agreement of the Parties or for good cause shown.

28.     Any trial exhibit that was produced in discovery by a party and that on its face appears to have been authored by an employee, officer, or agent of the party producing such document shall be deemed a true and correct copy of a document maintained in that party's files as of the date of the party's document collection under Federal Rule of Evidence 901.  Any trial exhibit not objected to in the Proposed Pretrial Order or its exhibits is deemed admitted into evidence.

29.     Any exhibit listed by a party may be offered as an exhibit by that party or by another party, subject to any evidentiary objections by the opposing party.

30.     Any exhibit admitted into evidence may be used equally by any party, subject to the Federal Rules of Evidence.

31.     The listing of a document on a party's exhibit list or the Joint Exhibit List is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document. Each party reserves the right to object to the admissibility of any evidence offered by the other party that was not on that party's

exhibit list, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

32.    The Parties agree that any description of a document or other material on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document or material.

33.    The Parties agree that if any party removes or otherwise withdraws an exhibit from its exhibit list after July 24, 2026, another party may amend its exhibit list to include that same exhibit. The Parties also agree that the Parties may make objections to such exhibit, other than an objection based on untimely listing.

34.    The Parties will exchange final digital copies of their exhibits, with exhibit numbers, no later than 5:00 p.m. on August 7, 2026.  The Parties shall make available for inspection, at a mutually convenient time, any physical exhibits to be used at trial, labeled with an exhibit number.   The final digital copy of each exhibit page will be endorsed with a unique page identifier, including the exhibit prefix, exhibit number, and page numbers of the electronic document. The exhibit prefixes shall be: "JTX" for exhibits on the Joint Exhibit List, "PTX" for exhibits on Plaintiffs' Exhibit List, and "DTX" for exhibits on BCAP's Exhibit List.  The page numbering shall begin at 1 for the first page of each exhibit and the numbering on each page should include the trial exhibit number and the physical page number separated by a decimal.  For example, page 62 of Joint Exhibit 5 would be endorsed / paginated as "JTX-5.62."

35.    Counsel for the parties will provide the Court with a complete set of all exhibits at the time and in the manner directed by the Court at the pretrial conference.  The trial exhibits should be named with their exhibit numbers (i.e., JTX, PTX, or DTX) and organized in ascending numerical order.

36.     On or before the first day of trial, counsel for each party will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for that party.

**B.      Demonstratives**

37.     Plaintiffs' demonstratives will be identified with PDX numbers.

38.     BCAP's demonstratives will be identified with DDX numbers.

39.     The Parties will exchange demonstratives intended for use in opening statements by 1:00 p.m. one day before opening statements. The Parties will provide any objections to such demonstratives by 3:00 p.m. on the day before opening statements, and the Parties will meet and confer by 4:00 p.m. the same day.  If good faith efforts to resolve the objections fail, the party objecting to the demonstrative shall bring its objections to the Court's attention by email (jlh_civil@ded.uscourts.gov) by 7:00 a.m. the next day.  The Parties can address any objections to demonstratives for opening statements during their respective statements.

40.     A party will provide demonstrative exhibits to be used in connection with direct examination (other than any adverse direct) by 7:00 p.m. the night before their intended use, and objections will be provided no later than 8:00 p.m. the night before their intended use.  The Parties are to meet and confer to attempt to resolve any objections at 9:00 p.m. the night before the demonstrative's intended use.  If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention by email (jlh_civil@ded.uscourts.gov) no later than 7:00 a.m. the day of its anticipated use.  At the time of submission, the party raising the objection(s) shall indicate if it wishes to utilize trial time to argue the objection or whether it reserves the right to argue its objection(s) in post-trial briefing.  Failure to comply with these procedures, absent an agreement by the Parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

41.     The Parties agree that the demonstrative exhibits they intend to use at trial do not need to be included on their respective exhibit lists that are part of this pretrial order.

42.     For each demonstrative exhibit, the Parties will disclose to the opposing party on the face of the demonstrative exhibit all trial exhibits that form the basis of the demonstrative exhibit.

43.     The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF format.  However, for video or animations, the party seeking to use the demonstrative will provide it to the other side electronically via a video or similar file. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony that contain no additional markings, commentary, or alterations, are not required to be provided to the other side in advance of their use.

44.     Notwithstanding the foregoing, demonstratives created during testimony or demonstratives to be used for impeachment or cross-examination do not need to be provided to the other side in advance of their use.   In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

## V.    STATEMENT OF INTENDED PROOFS

### A.    Plaintiffs

45.     Plaintiffs intend to prove that Defendant BCAP's Counterclaims and the underlying indemnity claims are factually groundless.  Accordingly, BCAP has no basis to avoid Plaintiffs' claims seeking monetary relief for BCAP's breaches of the SPA and NAFTA Agreement.

46.     In support, Plaintiffs intend to prove that Defendant BCAP's Counterclaims are the product of its efforts to manufacture a list of complaints (a "naughty list"), beginning shortly after the Closing, for the purpose of later challenging Morton's entitlement to the additional amounts

9

she is owed. Morton further intends to prove that she is not liable under the terms of the SPA for the various amounts BCAP seeks to recover and that MHF's inability to bid successfully on government contracts was not caused by any of her actions.

47.     NAFTA intends to prove that it was prepared to perform under the terms of the NAFTA Agreement and that BCAP had no basis for early termination. NAFTA intends to rebut BCAP's contention that NAFTA's services were not of sufficient quality to comply with its obligations under the NAFTA Agreement, to prove that certifications obtained through NAFTA's trainings were accepted by MHF's customers for decades, and to prove that NAFTA's certifications are specifically identified as acceptable in certain Statements of Work applicable to government contracts MHF has obtained.

48.     Plaintiffs intend to prove that Defendant BCAP suffered none of the losses it claims in its Answer and Counterclaims (D.I. 12) and is not entitled to any resulting monetary damages as relief.

49.     Plaintiffs further intend to prove there is no ongoing Federal agency investigation or threatened litigation to impose liability on Millennium, as alleged in Defendant BCAP's Counterclaim IX.

**B.      BCAP**

50.     BCAP intends to prove that Plaintiffs' claims relating to BCAP's use of the Indemnity Holdback (Counts I and III) fail under Section 7.9 of the SPA, which allowed BCAP to use the Indemnity Holdback "in its ***sole discretion*** to remunerate [BCAP] for" defined Losses (emphasis added) and specified that "The exercise of such set-off by a Buyer Party, whether or not ultimately justified, shall not constitute a breach of this Agreement."

51.     BCAP intends to prove that Count II of Plaintiffs' complaint—alleging that BCAP wrongfully granted its senior lender a lien on the Indemnity Holdback—fails under Section 7.13

of the SPA, which states, "[T]he Buyer shall have the right to collaterally assign (or has already collaterally assigned) to its senior lender all of its right, title and interest in, to and under this agreement as collateral for the financing arrangements provided (or to be provided) to buyer to assist with the consummation of the acquisition contemplated hereby."

52. BCAP intends to prove that NAFTA materially breached the NAFTA Agreement by failing to provide services or by providing services that did not meet "highest industry standards," entitling BCAP to terminate the remainder of the contract. BCAP intends to prove, among other things, that NAFTA used substandard and plagiarized training materials, offered trainings that were not as rigorous or thorough as other industry-leading offerings, listed trainers on its website who never worked at the organization, refused to provide specified certification services, lacked overall industry recognition and reputation, and over-charged for offerings provided by other more reputable organizations.

53. BCAP intends to prove that Morton failed to pay down $212,268.85 in payroll that accrued prior to Closing and which Morton promised to pay pursuant to the SPA.

54. BCAP intends to prove that Morton failed to pay $147,824.45 in accounts payable pursuant to her promise in Section 2.11(c) of the SPA that that "[a]ll accounts payable and notes payable of the Company Parties whether shown on the balance sheets included in the Financial Statements or accrued thereafter…have been paid in full as of the Closing Date."

55. BCAP intends to prove that Morton breached her obligation to disclose all liabilities or material financial transactions prior to Closing because she falsely represented MHF's financial condition in her disclosures under the SPA and knowingly failed to disclose approximately $7.4 million in cash that Morton removed from MHF accounts in the weeks before Closing.

11

56.      BCAP intends to prove that Morton breached her obligations to preserve and protect MHF's intellectual property by stealing and destroying critical MHF business files and intellectual property in violation of her obligations under the SPA and associated contracts.  BCAP intends to prove that this misconduct prejudiced MHF's operations and caused BCAP to lose bids—and the resulting profits—on government contracts with the Federal Bureau of Investigation, Immigration and Customs Enforcement, and the U.S. Marine Corps.  BCAP intends to prove that the spoliation for which this Court sanctioned Morton—*see* D.I. 96—contributed to the BCAP's Losses and damages.

57.      BCAP intends to prove that Morton breached her obligations under the SPA to transfer key business accounts (Vimeo and QuickBooks) to new management at MHF after closing, which caused Losses and prejudiced business operations.

58.      BCAP intends to prove that Morton breached her commitments to refrain from competing with MHF after closing by submitting bids on government contracts for the exact services MHF provided.

59.      BCAP intends to prove that both Morton and NAFTA violated their contractual obligations to provide training, certification, and consulting services to MHF by providing services that did not meet highest industry standards, by refusing to provide agreed-upon services, or by demanding additional compensation for services already contemplated by the agreements.

60.      BCAP intends to prove that Morton agreed in a Side Letter Agreement (which was part of the SPA as a Transaction Document) to pay $5,522.00 in legal fees related to a specific ongoing matter and breached the Side Letter Agreement by refusing to pay those fees.

61.      BCAP intends to prove that Morton breached her certification and disclosure obligations in the SPA when she knew about, but failed to disclose, a billing irregularity that

12

Morton allowed to continue during her ownership of MHF whereby MHF wrongfully billed EPA customers for services that MHF was not providing. BCAP intends to prove that this irregularity required MHF to make a disclosure to the EPA OIG, causing significant Losses for MHF.

## VI.   WITNESSES

62.   Plaintiffs will call the following witnesses in their case-in-chief: Sherry Morton, Joseph Burkhart, Jeff Eagan, Frank Sturek, Kathleen Zumbar, Kristina Morton, Neil Dhruve, Heather Collins, Matthew Kostek and Julia Alcarez. Designated deposition testimony is identified in **Exhibit 9**.

63.   BCAP will call the following witnesses in its case-in-chief: Joseph Burkahrt, Jeffrey Eagan, Sherry Morton, Frank Sturek, Heather Collins, Kathleen Zumbar, Kristina Morton, Neil Dhruve, David Thompson, Dr. Anthony Abbott, and Kellie Fedkenheuer. Designated deposition testimony is identified in **Exhibit 10**.

64.   The Parties stipulate and agree—in the interests of justice, judicial economy, and avoidance of burden for the Parties and third-party witnesses—that each Party may introduce into evidence at trial designated deposition testimony of Kathleen Zumbar, notwithstanding the fact that Ms. Zumbar resides within 100 miles of the place of trial. The Parties stipulate and agree that they will not object to such introduction of Ms. Zumbar's designated deposition testimony solely on the basis that the deposition testimony constitutes hearsay because it is a statement not made in court during the trial in this matter. Otherwise, each party reserves its right to object to the substance of designated deposition testimony under any applicable Federal Rule of Evidence.

65.   As reflected in the Stipulation on Depositions filed at D.I. 54, the Parties stipulate and agree that no party will call John C. Morton, Plaintiff Sherry Morton's husband, or Roxie Hinton as a witness during these proceedings, including at trial. No party will rely on testimony from John C. Morton or Roxie Hinton in any way.

66.     The Parties agree that only the following witnesses may be called to testify live at trial:  Sherry Morton, Joe Burkhart, Jeff Eagan, Dr. Anthony Abbott, Kellie Fedkenheuer, Julia Alcarez and Matthew Kostek.  All other testimony will be presented by deposition.

67.     In the absence of an alternative agreement between the Parties or order of the Court, fact witnesses to be called for live testimony, including rebuttal fact witnesses (if any), shall not be present in the courtroom during witness testimony until after they provide their live testimony, have been excused, and will not testify again at the trial. Fact witnesses shall not, before testifying, review the transcripts of the trial testimony of other fact witnesses. However, pursuant to Federal Rule of Evidence 615(b), this exclusion does not apply to one designated representative for NAFTA and one designated representative for BCAP, both of whom will be permitted to attend the entire trial. Designated testifying expert witnesses and a party's corporate representative may be present in the courtroom during trial and/or may review transcripts of trial testimony.  The Parties agree that cross-examination will not be limited to the scope of direct examination.

## VII.    MOTIONS IN LIMINE

68.     BCAP's Motions *in Limine*, Plaintiffs' Responses, and BCAP's Replies are attached as Exhibits 11-13.

69.     Exhibit 11: BCAP's Motion in Limine #1 to Enforce the SPA's Interpretive Provisions.

70.     Exhibit 12: BCAP's Motion in Limine #2 to Exclude Testimony of Sherry Morton.

71.     Exhibit 13: BCAP's Motion in Limine #3 to Exclude Irrelevant Evidence of Alleged Motive.

14

## VIII.   AMENDMENTS TO THE PLEADINGS

72.     The Parties do not contemplate any amendments to their pleadings.  However, the Parties reserve the right to supplement or amend their pleadings to the extent allowed pursuant to Federal Rule of Civil Procedure 15.

## IX.   SETTLEMENT EFFORTS

73.     Consistent with D. Del. Local Rule 16.3(c)(12), this Joint Proposed Pretrial Order includes a certification for the parties that they have engaged in a good faith effort to explore the resolution of the matter by settlement.

## X.   LENGTH OF TRIAL

74.     This matter is scheduled for a five-day bench trial beginning at 9:30 a.m. on August 17, 2026, with the subsequent days beginning at 9:00 a.m.

**AGREED AS TO FORM:**

/ /s/ *Daniel A. Griffith*
Daniel A. Griffith (#4209)
**WHITEFORD, TAYLOR & PRESTON LLC**
600 North King Street, Suite 300
Wilmington, DE 19801
T: (302) 357-3254
F: (302) 357-3274
dgriffith@whitefordlaw.com

David S. Panzer, *pro hac vice*
Eric S. Kronman, *pro hac vice*
Thomas M. Craig, *pro hac vice*
Grace Williams, *pro hac vice*
**FLUET & ASSOCIATES, PLLC**
1751 Pinnacle Drive, Suite 1000
Tysons, VA 22102
T: (703) 590-1234
F: (703) 590-0366
dpanzer@fluet.law
ekronman@fluet.law
tcraig@fluet.law
gwilliams@fluet.law
e-file@fluet.law

*Attorneys for Defendant BCAP GDI 1, Inc.*

/s/ *Sidney S. Liebesman*
Sidney S. Liebesman (DE ID 3702)
**FOX ROTHSCHILD LLP**
1201 N. Market St., Suite 1200
Wilmington, DE 19801
Tel.: (302) 622-4237
sliebesman@foxrothschild.com

Brian M. Johnson (*pro hac vice*)
Brian S. Yu (DE ID 6482)
**DICKINSON WRIGHT PLLC**
300 West Vine Street, Suite 1700
Lexington, KY 40507
Tel.: (859) 899-8700
bjohnson@dickinsonwright.com
byu@dickinsonwright.com

*Attorneys for Plaintiff*

SO ORDERED this _____ day of _____, 2026

_____
The Honorable Jennifer L. Hall
United States District Judge

16